And our final case of the day is United States v. Ponlein. Good morning, judges. Mr. Nash. Please, the Court. I'm Michael Nash. I'm appearing for Jacob Ponlein. The sole issue here today is whether, in the context of the sentencing guidelines 2B.1.1, whether the word loss is ambiguous. I think that, in retrospect, the government is correct as to the number of victims, so we would abandon that argument. I think, from my point of view, from Mr. Ponlein's point of view, we would point out that 2B.1.1 talks about loss in terms of dollars, not something else, not loss of a loved one, not being lost, but loss in terms of dollars. And there's no ambiguity there. I think that the opinions expressed by the Court in Alford and in Banks, the Third Circuit case, are persuasive and much more persuasive than the Sixth Circuit's decision in you, which we cite in our reply brief. Mr. Nash, so the way I kind of conceptualize the main issue here is whether or not Kaiser overrules Stinson, right? And I know that there's lots written about this, but one of the things that, to me, differentiates, particularly here, the Sentencing Commission's commentary with regard to loss to the agency's interpretation of its own regulations under Kaiser, is that in 2001, it appears that the Sentencing Commission actually published its commentary that it thought loss would be actual as well as intended loss for notice and comment in the federal legislature. They did, and then they abandoned it the next year, and it doesn't appear again, as I already said. Well, they received the, in 2001, they received comments. They published their response, and that's kind of what led to the commentary that's currently in the Sentencing Guidelines Manual. So, basically, isn't the fact that this particular issue was published and sent out for notice and comment and went through that process, right, whereas the agency interpretation in Kaiser didn't, doesn't that distinguish what we do or what the Sentencing Commission does with the Sentencing Guidelines from what the agency did with its regulations in Kaiser? Well, they changed it from intended loss to loss, and it's been loss for all these years. Actually, it's funny that I use that word. If in word you were to type the actual, actually what occurred, word would correct you and say forget about the word actual. If you type the word loss in and set actual loss, it would correct you and say don't put it in. Not that that's a legal argument, but grammatically, I think it's, I almost want to say common sense, but obviously others disagree with that. You are correct that the Sentencing Commission, you know, walked it back and all these years we have the word loss, but if we take that history, what are we to make of the fact that now the Sentencing Commission is considering putting intended loss in the text of the guidelines? Where does that put us? Puts it that they didn't like banks and they didn't like the decision and they want to stay with intended loss, but at the time this defendant was sentenced, the word was loss, and it wasn't loss of anything but in terms of dollars, and the government and the defendant agreed that the loss amount was $8 million something, not $52 million. But that's if you ignore the commentary, right? Yes. If you ignore the commentary. Correct. And I guess my question is why do we need to ignore it since it's there and it was put through notice and comment? Because loss is not ambiguous. Loss is very clear. Nobody could, again, I know people disagree with this. But we don't have to refer – we're not limited to referring to the commentary only when the term is ambiguous. I believe it's got to be genuinely ambiguous. I believe that's the holding of Kaiser. It certainly isn't the holding of Kaiser. I would agree. It does not. And the Supreme Court has said more often than it should need to that we are supposed to follow their decisions until they overrule them. Correct. How is that consistent with your position that we should just ignore Stinson? It makes it more difficult. But I think the term loss is not, in what the Kaiser court said, genuinely ambiguous. If we're talking about dollars and there's a settlement conference and the judge asks for what's your offer and the fellow says $340,000, he means dollars and that's what they're talking about here. If I may, I'd save a little time for rebuttal unless there are more questions. Certainly, Mr. Nash. Thank you, Judge. Ms. Alexakis. May it please the Court. Georgia Alexakis representing the United States. The district court here did not err in calculating the defendant's guidelines when using intended loss to determine his offense level. And this is true whether this court analyzes the meaning of loss purely under Stinson and this Circuit's ruling. or after it accounts for Kaiser. I would agree with Judge Easterbrook that Kaiser did not overrule Stinson. It explicitly stated that it was not overruling Seminole Rock, our, and then in a footnote goes on to cite a whole series of cases, including Stinson, that fall into that camp. I would say, and I think the government has set this out in its brief, that this distinction between- You know, of course, that the Solicitor General has told the Supreme Court that Kaiser did supersede Stinson. Now, why in the world? I've been having trouble. You may know that there are multiple cases just like this pending before multiple panels of the circuit. And one of the problems has been, I think, that the government is trying to talk out of both sides of its collective mouth. So in your view, representing the United States as an institution, is Stinson alive or dead? Judge, and I should be clear, this is not my personal view. This is the government's view. Yes, I'm asking for the view of the United States. Sure, and I think our brief sets it out in cites to the Solicitor General's filings in front of the Supreme Court, where I would disagree respectfully that the Solicitor General has said that Kaiser displaces Stinson. I think what the Solicitor General has said is that Kaiser and Stinson work in tandem together, that Kaiser informs the analysis under Stinson. Stinson tells us that the commentary is authoritative unless there is an inconsistency between the guideline and the commentary. Kaiser takes us back a step and helps the parties and the courts determine whether that inconsistency exists by directing courts to first consider whether the regulation, or in this case the text of the guideline itself, is genuinely ambiguous. Where there is ambiguity, there cannot then be inconsistency between the guideline and the commentary. And so here, where loss is genuinely ambiguous, for the reasons set out in the government's brief, where there is more than one reasonable construction of the word loss, there cannot be an inconsistency between loss in the guideline and intended loss in the commentary, and therefore the district court did not err in relying on intended loss when calculating the defendant's guideline. Is that a very long way of saying the government wins under Kaiser or Stinson? I think it is, Judge Jackson-Akwumi. Although, again, respectfully I would disagree with this notion that the government is trying to have it both ways. I think the government is trying to reconcile the court's analysis in Kaiser in a world in which the Supreme Court was quite clear that it was not overruling Seminole Rock or our, or relatedly, Stinson, and that instead Kaiser was simply clarifying those instances in which courts should rely on an agency's interpretation of a regulation, or in this case, the commission's commentary itself. And so here, having looked at the text, the structure, the purpose of it. I appreciate the difficult position you're in. The Solicitor General's position is not pellucid. And, of course, the Solicitor General has not sought certiorari in the cases from the Third and Fourth Circuits that the government has lost outright on this question. I'm sure you're right, Judge. I know it's not the right question to ask you is, but are they waiting for Loper Bright? We discussed that in the last case. These are discussions that I am not privy to. I'm not privy to, Judge. And if you were, you couldn't tell us, because it would be covered by the attorney-client privilege. I think that would also be true, Judge, yes. I think ultimately I would rest on the government's briefs and the arguments set forth there as to why loss is genuinely ambiguous under Kaiser, under the Kaiser analysis, and therefore why the district court did not err in then importing a meaning of intended loss when calculating the guidelines. Are there any questions? Thank you. Thank you, counsel. Anything further, Mr. Nash?  Listening to the court's questions and the prosecutor's answers, I'm reminded of what Kaiser said in one portion of its decision. I don't remember whose opinion it was, though, in that case. Not to defer to convenient litigating position to defend agency action. And I must say, when I read the government's brief, That loses me. The Supreme Court has never deferred to litigating positions. No, no, what they're talking about there. But the note in the guidelines is not a litigating position. When I'm talking about their position in this case, and I think they're defaulting to a litigating position to defend what happened in this case. No, the note in the guidelines is not a litigating position. When that issue arises in Chevron terms, they're referring to what's in briefs rather than what's in legal documents like regulations. And what I'm referring to is what's in their brief in this case. And that's all I have to say, Judge. Okay, well, Mr. Nash, we appreciate your willingness to accept the appointment in this case and your assistance to court in court. The case is taken under advisement and the court will...